**Christopher Daniel HOPPER, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 08–01–00326–CR.**

Court of Appeals of Texas, El Paso.

June 20, 2002.

H. Thomas Hirsch, Hirsch & Stroder, L.L.P., Odessa, for appellant.

Tracey Bright, Michele L. Surratt, Odessa, for state.

Before Panel No. 4 BARAJAS, C.J., LARSEN, and McCLURE, JJ.

## OPINION

ANN CRAWFORD McCLURE, Justice.

Christopher Daniel Hopper appeals from his conviction for the offense of resisting arrest. A jury found Appellant guilty and the court assessed his punishment at a fine of $350 and confinement in the county jail for six months. The trial court suspended the sentence and placed Appellant on community supervision for one year. Finding legally sufficient evidence to support the conviction, we affirm.

## FACTUAL SUMMARY

Chris Myers, Afton White, and Gary Lane are police officers with the City of Odessa. During the early morning hours of November 8, 2000, all three officers were dispatched to a fight at Joe's Italian Food Restaurant in Odessa. The dispatcher informed them that a taxi driver was the complainant. Upon arriving, the officers saw a taxi driver and talked to him for a few minutes. There was a broken beer bottle on the hood of the taxi. At one point, Lane and White went to the back door of the restaurant and interviewed some individuals while Myers continued to speak with the cab driver. Myers then walked up to the back door of the restaurant and spoke with Justin Bowan who consented to Myers entering the building. Myers talked with Bowan to get "his side of the story." After a few minutes, Myers went back outside to further interview the taxi driver. Suddenly, Myers heard yelling coming from inside of the restaurant and saw both Lane and White rush into the building. Believing an emergency existed, Myers followed the other officers inside.

White and Lane entered the restaurant because they heard yelling, screaming, and the sound of chairs being scooted around. Believing another fight was in progress, they ran inside. White saw Appellant and another man chasing one another and running towards the bathroom. Both men ran inside the bathroom, slammed the door, and continued to yell at one another. Eventually, the officers and restaurant owner were able to persuade them to open the bathroom door. Both men continued to yell and shove one another while the officers removed them. It was obvious to the officers that Appellant was intoxicated.

In an attempt to get Appellant under control, Myers instructed him to sit down at a table. Myers stood behind Appellant while one of the other officers stood in front of him. Despite Myers' instructions to the contrary, Appellant repeatedly put his hands in his pockets and directed profanities at Myers. The officers became concerned by this behavior since they had not done a weapons pat-down and Myers finally pulled Appellant's hand out of his pocket. As Myers did so, Appellant swung his fist at Myers. He then jumped out of the chair and tried to turn towards Myers. Myers immediately decided to arrest Appellant, placed a restraining hold on him, and pulled him to the ground so that it would be easier to handcuff him. Another officer assisted Myers but they had difficulty gaining control of Appellant who continued to fight them by swinging at them

with his arms and kicking them. During this entire struggle, Myers repeatedly told Appellant that he was under arrest and to stop resisting. At one point, Appellant swung his right hand at the officers. The blow struck the other officer in the arm or shoulder before striking Myers in the chest. Myers struck Appellant in the face in an effort to gain control. Although the officers eventually succeeded in handcuffing Appellant, he continued to struggle. Because Appellant suffered a black eye and cut during the struggle, Myers called an ambulance. The paramedics were unable to treat Appellant because he continued to be belligerent and uncooperative and consequently, he was removed from the ambulance and transported to the hospital by one of the officers.

## LEGAL SUFFICIENCY

In his sole point of error, Appellant complains that the trial court erred in denying his motion for an instructed verdict. This argument is in reality a challenge to the legal sufficiency of the evidence supporting his conviction. *Brimage v. State*, 918 S.W.2d 466, 470 & n. 3 (Tex.Crim.App. 1994); *Madden v. State*, 799 S.W.2d 683, 686 & n. 3 (Tex.Crim.App.1990). Therefore, we will apply the standard of review applicable to a legal sufficiency challenge. If the evidence is sufficient to sustain the conviction, then the trial judge did not err in overruling Appellant's motion for instructed verdict.

### Standard of Review

In reviewing the legal sufficiency of the evidence to support a criminal conviction, we must review all the evidence, both State and defense, in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jack-*

*son v. Virginia*, 443 U.S. 307, 318–19, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979); *Geesa v. State*, 820 S.W.2d 154, 159 (Tex.Crim.App.1991). This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic to ultimate facts. *Jackson*, 443 U.S. at 319, 99 S.Ct. at 2789, 61 L.Ed.2d at 573. We do not resolve any conflict of fact or assign credibility to the witnesses, as it was the function of the trier of fact to do so. *See Adelman v. State*, 828 S.W.2d 418, 421 (Tex.Crim.App.1992); *Matson v. State*, 819 S.W.2d 839, 843 (Tex.Crim.App.1991). Instead, our duty is only to determine if both the explicit and implicit findings of the trier of fact are rational by viewing all of the evidence admitted at trial in a light most favorable to the verdict. *Adelman*, 828 S.W.2d at 422. In so doing, any inconsistencies in the evidence are resolved in favor of the verdict. *Matson*, 819 S.W.2d at 843. Further, the standard of review is the same for both direct evidence and circumstantial evidence cases. *Geesa*, 820 S.W.2d at 158.

### Elements of Resisting Arrest

A person commits an offense if he intentionally prevents or obstructs a person he knows is a peace officer or a person acting in a peace officer's presence and at his direction from effecting an arrest, search, or transportation of the actor or another by using force against the peace officer or another. · Tex.Pen.Code Ann. § 38.03(a)(Vernon 1994). It is no defense to prosecution under this section that the arrest or search was unlawful. Tex.Pen. Code Ann. § 38.03(b). The information alleged that Appellant did then and there:

[I]ntentionally prevent and obstruct Chris Meyers, a person the defendant knew to be a peace officer, from effecting the arrest of Christopher Daniel

Hopper, by using force against said peace officer.

### Use of Force Against the Arresting Officer

■ Citing *Bryant v. State*, 923 S.W.2d 199 (Tex.App.-Waco 1996), *pet. ref'd*, 940 S.W.2d 663 (Tex.Crim.App.1997), Appellant argues that the evidence is legally insufficient because he directed force "towards" Myers but he did not direct any force "against" him.

In *Bryant*, the defendant, when told he was under arrest, stiffened up and jerked back with a violent backward swing of his hand as the officer attempted to handcuff him. The blow came close to striking the officer's face. Bryant then swung around in an attempt to face the officer. In response, the officer placed Bryant in a restraint by grabbing him around the neck. The forward motion carried both the officer and Bryant off of a porch and they fell to the ground. While on the ground, Bryant held his arm in a stiff manner underneath him so that the officer could not handcuff him. Finally, Bryant stopped struggling and the officer handcuffed him. On appeal, Bryant made the same argument urged by Appellant here. Characterizing his actions as "evasive" and as mere attempts to pull his arms out of the officer's grasp or to flee, he claimed that he did not direct any violence toward the arresting officers. *Bryant*, 923 S.W.2d at 206. While acknowledging that there is a distinction between striking an arresting officer's arm and simply pulling one's arm away, the court of appeals noted that if the facts demonstrate that the act of pulling one's arm away is done in such a manner that it constitutes the use of force against the officer, such action is prohibited by Section 38.03. *Id.* Consequently, the court found the evidence sufficient to sustain the conviction. In making this determination,

the court of appeals disagreed with some of the language in *Raymond v. State*, 640 S.W.2d 678, 679 (Tex.App.-El Paso 1982, pet. ref'd). In *Raymond*, this court held the evidence insufficient to sustain the defendant's conviction for resisting arrest where the defendant merely pulled his arm away from the arresting officer. The opinion drew a distinction between violence directed "toward" an officer and general violent force utilized in pulling away from an officer during the course of an arrest. "Where violence *toward* the officer is present, Section 38.03 applies, ... [but,] [w]here violent force is not directed at the arresting officer, the circumstances are not exigent." *Raymond*, 640 S.W.2d at 679. The *Bryant* court criticized this language because Section 38.03 prohibits the use of force against a peace officer, not toward him. *Bryant*, 923 S.W.2d at 207. The point made by *Bryant* is well taken and we disavow the language in *Raymond* using the word "toward" in connection with Section 38.03.

It bears repeating that Section 38.03 prohibits the use of force against an officer, not the use of force toward the officer. *Id.* "Toward" means "in the direction of" while "against" is defined as "in opposition to or hostility to." WEBSTER'S NEW UNIVERSAL UNABRIDGED DICTIONARY 34, 1930 (2nd ed.1983); *Bryant*, 923 S.W.2d at 207, *citing* MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 21, 1248 (10th ed.1993). Thus, a person who uses force in order to shake off an officer's detaining grip, whether by pushing or pulling, may be guilty of resisting arrest under Section 38.03. *Bryant*, 923 S.W.2d at 207–08. For example, if a person pulls his arm away in a sufficiently violent manner and with enough force to throw the arresting officer to the ground, he is guilty of resisting arrest under Section 38.03. This is true even though he forcefully pulled "away" from the officer, not "towards" him.

Here, the evidence reveals that Appellant intentionally directed force against Myers and the other arresting officer. As Myers attempted to arrest handcuff Appellant, he struck Myers in the chest with his fist and he kicked both officers during the struggle. This evidence alone is sufficient to sustain the conviction for resisting arrest. Consequently, the trial court did not err in overruling Appellant's motion for instructed verdict. We overrule the sole point of error and affirm the judgment of the trial court.