**Gerardo Cervantes TORRES, Appellant,**

v.

**The STATE of Texas, Appellee.**

**Nos. 04–02–00403–CR, 04–02–00404–CR.**

Court of Appeals of Texas,
San Antonio.

March 5, 2003.

Julie Pollock, Hitchings & Pollock, San Antonio, for Appellant.

Alan E. Battaglia, Assistant Criminal District Attorney, San Antonio, for Appellee.

Sitting: PAUL W. GREEN, Justice, KAREN ANGELINI, Justice SANDEE BRYAN MARION, Justice.

## OPINION

Opinion by KAREN ANGELINI, Justice.

Pursuant to a plea-bargain agreement, Gerardo Cervantes Torres pled guilty to possession of cocaine in cause number 1997CR0936 and pled guilty to delivering cocaine in cause number 1997CR1373. On May 29, 1997, the trial court sentenced Torres to ten years imprisonment and a fine of $1,000 in cause number 1997CR0936 and sentenced him to ten years imprisonment and a $2,500 fine in cause number 1997CR1373. The trial court then suspended both of Torres's sentences and placed him on community supervision for a period of ten years. On May 24, 2002, the trial court heard the State's motion to revoke Torres's community supervision. After hearing the evidence, the trial court found that Torres had violated condition number one of his community supervision by committing the offense of resisting arrest; the trial court then revoked Torres's community supervi-

sion and sentenced Torres to five years imprisonment and a fine of $500 in cause number 1997CR0936 and sentenced him to five years imprisonment and a fine of $500 in cause number 1997CR1373. The sentences run concurrently with one another.

 In a single issue, Torres argues that the evidence was insufficient to support the trial court's finding that he committed the offense of resisting arrest. In a proceeding to revoke community supervision, the State has the burden of proving by a preponderance of evidence that the defendant violated the terms of his community supervision. *Cobb v. State*, 851 S.W.2d 871, 874 (Tex.Crim.App.1993); *Kaylor v. State*, 9 S.W.3d 205, 206 (Tex. App.-San Antonio 1999, no pet.). To meet this burden of proof, the greater weight of the evidence must create a reasonable belief that the defendant violated a condition of probation as alleged. *Battle v. State*, 571 S.W.2d 20, 22 (Tex.Crim.App.1978) (panel op.); *Kaylor*, 9 S.W.3d at 206. In reviewing the revocation of an appellant's probation, we apply an abuse of discretion standard. *Jackson v. State*, 645 S.W.2d 303, 305 (Tex.Crim.App.1983); *Kaylor*, 9 S.W.3d at 206. We review the evidence in the light most favorable to the trial court's order; the trial court is the sole judge of the credibility of the witnesses. *Jones v. State*, 589 S.W.2d 419, 421 (Tex.Crim.App. 1979); *Kaylor*, 9 S.W.3d at 206.

A person commits the offense of resisting arrest if he "intentionally prevents or obstructs a person he knows is a peace officer or a person acting in a peace officer's presence and at his direction from effecting an arrest ... of the actor or another by using force against the peace officer or another." TEX. PEN.CODE ANN. § 38.03(a) (Vernon 1994).

At the hearing on the motion to revoke, Officer Stephen Huffaker, the arresting officer, testified that he and Officer DeHo-

yos went to Torres's house in response to "an assault call, family violence." Upon his arrival, he saw Torres's wife and sister-in-law in the front yard; both were emotional and crying. According to Huffaker, the women told him that there had been an argument and that Torres had assaulted the sister-in-law. Huffaker and DeHoyos went inside the home to find Torres. Torres appeared to Huffaker to be very agitated and upset. DeHoyos questioned Torres and then both officers went back outside to talk to the sister-in-law. After talking to the sister-in-law, DeHoyos decided to arrest Torres for assault. Both officers went back inside the house and found Torres in the kitchen. They informed Torres that he was being arrested. According to Huffaker, Torres responded by knocking DeHoyos's hand away:

> A: [Torres] was standing in the kitchen. We told him that he was going to be placed under arrest and asked him to turn around and place his hands behind his back, and he said, "Why?" And we said because he was going to be arrested for assault family violence. At that point Officer DeHoyos reached out to try and grab his arm, and the Defendant was like this and knocked his hand back.
>
> Q: Okay. And, for the record, you are lifting your arm in a fast movement up in the air towards the back.
>
> A: Yes, ma'am.

Torres then backed away from the officers and kept trying to reach behind his back. Huffaker then heard a drawer slide open and closed. Huffaker told Torres to put his hands in front of him where the officers could see them, but Torres did not comply. Thinking that Torres had reached for a knife, Huffaker sprayed Torres with pepper spray:

> A: At that point, I took my pepper spray out and I advised him—well, I

had my pepper spray in my hand in his vision—that I was going to pepper spray him if he didn't comply. At that point he struck his hand out like that and I sprayed him.

Q: Okay. And for the record, you're indicating his hand straight out in front of him.

A: Right.

Q: Did he touch your hand?

A: No, he didn't touch me.

Q: Did he appear to be coming in the direction of you?

A: Well, his hand did. He put it out like this.

Q: Reaching towards you?

A: Towards me.

When Huffacker handcuffed Torres, Torres jerked his arm away:

[Torres] kind of jerked his arm. We kind of had to force his arm behind him in order to get him handcuffed, and then we took him to the water hose to give him a little bit of water.

On cross-examination, Huffacker admitted that there was not a physical fight between him and Torres. According to Huffacker, when Officer DeHoyos attempted to grab Torres's hand to handcuff him, Torres "swung his arm up like that, knocking his hand off." Huffacker conceded that Torres "was pulling his arm away from getting handcuffed." On redirect, Huffacker again explained that when he and DeHoyos were first trying to handcuff Torres, DeHoyos tried to grab Torres's arm to handcuff him. In response, Torres raised his arm up and knocked DeHoyos's hand away:

Q: And when Officer DeHoyos attempted to grab the Defendant's arm to handcuff him, what did the Defendant do with his arm?

A: He raised his arm up like this, knocked the hand away.

Q: I'm sorry?

A: He raised his arm up like this and caused Officer DeHoyos's arm to come off his.

Q: When the Defendant raised his arm up, did he knock Officer DeHoyos's arm? Did he hit it?

A: Yes, he did.

Torres argues that Officer Huffacker's testimony is insufficient to show that he used force against either one of the officers. According to Torres, he was merely pulling his hand away from the officer. For support, Torres relies on *Raymond v. State*, 640 S.W.2d 678, 679 (Tex.App.-El Paso 1982, pet. ref'd), which held that the evidence was insufficient to sustain the defendant's conviction for resisting arrest where the defendant merely pulled his arm away from the officer. *Raymond* distinguished violence directed "toward" an officer and general violent force utilized in pulling away from an officer during the course of an arrest. *See id.* ("Where violence *toward* the officer is present, Section 38.03 applies, ... [but,] [w]here violent force is not directed at the arresting officer, the circumstances are not exigent."). Likewise, *Leos v. State*, 880 S.W.2d 180, 184 (Tex.App.-Corpus Christi 1994, no writ), distinguished actions directed toward an officer from those actions that pull away from an officer. In *Leos*, the defendant crawled on his shoulders and knees with his hands clasped to his stomach in an attempt to frustrate the officer's attempts to shackle him. *Id.* The *Leos* court held that such an attempt was an insufficient showing of force directed toward an officer to sustain a conviction of resisting arrest. *Id.*

■ The El Paso and Waco courts of appeals have criticized this toward/pulling away distinction in *Raymond* and *Leos*, emphasizing that section 38.03 prohibits

the use of force *against* an officer, not toward him. *Hopper v. State,* 86 S.W.3d 676, 679 (Tex.App.-El Paso 2002, no pet.); *Bryant v. State,* 923 S.W.2d 199, 207 (Tex. App.-Waco 1996), *pet. ref'd,* 940 S.W.2d 663 (Tex.Crim.App.1997). Thus, a person who uses force in order to shake off an officer's detaining grip, whether by pushing or pulling, may be guilty of resisting arrest under section 38.03. *Hopper,* 86 S.W.3d at 679; *Bryant,* 923 S.W.2d at 207–08. We agree with the El Paso and Waco courts of appeal and adopt their reasoning. Officer Huffacker testified that Torres raised up his arm and knocked Officer DeHoyos's hand away. The evidence sufficiently showed that Torres used "force" *against* Officer Huffacker pursuant to section 38.03. Moreover, even under the *Raymond* and *Leos* holdings, Officer Huffacker's testimony sufficiently showed that Torres acted *toward* Officer DeHoyos. The trial court, therefore, did not abuse its discretion in revoking Torres's community supervision.

We affirm the judgments of the trial court.