# NOS. 12-09-00399-CR
# 12-09-00400-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *TYNESHIA ROECHELLE HENDERSON,* *APPELLANT* | § | *APPEAL FROM THE* |
| *V.* | § | *COUNTY COURT AT LAW* |
| *THE STATE OF TEXAS,* *APPELLEE* | § | *ANDERSON COUNTY, TEXAS* |

### *MEMORANDUM OPINION*

Tyneshia Roechelle Henderson appeals her convictions for resisting arrest, search, or transportation and evading arrest or detention. She raises two issues on appeal challenging the legal and factual sufficiency of the evidence to support her convictions. We affirm.

### BACKGROUND

At approximately 3:00 a.m. on January 22, 2006, Officer Jason Waldon of the Palestine Police Department[1] was on patrol. In full uniform, he was patrolling the area around the Touch of Class Nightclub on foot. He heard a woman later identified as Appellant yelling and screaming obscenities at someone inside a vehicle. Officer Waldon began to investigate by approaching Appellant to interview her. According to Officer Waldon, Appellant "let loose with a tirade of expletives," said she did not have to speak with him, circled around the vehicle, and walked toward the entrance of the club at a "brisk pace," just "short of running." During this time, Officer Waldon commanded Appellant to stop several times, but Appellant failed to comply. Officer Waldon caught up with Appellant and grabbed her arm. She immediately turned and put her finger in his face, told him that he did not have a right to touch her, and demanded that he release her. Appellant then jerked her arm out of Officer Waldon's grasp and continued to the nightclub entrance. Officer Waldon informed Appellant that she was under arrest and attempted to place

---

[1] Officer Waldon is no longer employed by the Palestine Police Department. He is currently a detective at the Williamson County Sheriff's Office.

her in handcuffs.   Appellant again refused to comply and was "jerking her arms away, arguing, twisting her body in such a way as to keep [Officer Waldon] from being able to handcuff her."   By this time, a crowd had gathered, and another woman, later identified as Nikki Johnson, attempted to intervene by pulling Appellant away from Officer Waldon.   The officer told Johnson to release her grip, but she initially failed to heed Officer Waldon's command.   She chose to comply after being informed that she would receive a dose of pepper spray if she did not release Appellant. The entire episode lasted approximately five minutes, with the struggle comprising "several seconds" of the entire event.   Both Appellant and Nikki Johnson were eventually detained and arrested.   While Officer Waldon attempted to escort Appellant to his patrol unit, Appellant repeatedly tried to pull away from the officer and also tried to walk away after he momentarily released her arm.

Appellant was charged by information with the offenses of resisting arrest, search, or transportation and evading arrest or detention.   Appellant pleaded not guilty to both charges. After a trial, the jury found Appellant guilty of both charges.   The trial court assessed punishment at one year of confinement suspended for two years on the resisting arrest conviction, and 180 days of confinement suspended for one year, conditioned on serving ten days in the county jail, for the evading detention conviction.

### SUFFICIENCY OF THE EVIDENCE–STANDARD OF REVIEW

In her first and second issues, Appellant argues that the evidence is legally and factually insufficient to support her convictions of resisting arrest, search, or transportation and evading arrest or detention.

The Texas Court of Criminal Appeals recently held that the *Jackson v. Virginia* legal sufficiency standard is the only standard a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the state is required to prove beyond a reasonable doubt.   *See Brooks v. State*, 323 S.W.3d 893, 894 (Tex. Crim. App. 2010) (plurality op.).   Accordingly, we will not independently consider Appellant's challenge to the factual sufficiency of the evidence.

Under the single sufficiency standard, we view the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.   *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct., 2781, 2789, 61 L. Ed. 2d 560 (1979); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).   Under this standard, a reviewing court does not sit as a thirteenth juror and may not substitute its judgment for that of the fact finder by reevaluating the weight and credibility of the evidence.   *See Brooks*, 323 S.W.3d at 899; *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999).

Rather, we defer to the trier of fact's responsibility to resolve conflicts in testimony, weigh evidence, and draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Hooper*, 214 S.W.3d at 13. Every fact does not need to point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction. *Hooper*, 214 S.W.3d at 13.

## SUFFICIENCY OF THE EVIDENCE–EVADING ARREST OR DETENTION

In her second issue, Appellant challenges the sufficiency of the evidence to support her conviction for evading arrest or detention. More particularly, she contends that she was not detained and was thus free to disregard Officer Waldon's commands to stop. Alternatively, she asserts that her detention was not lawful.

## Applicable Law

The essential elements of evading arrest or detention are (1) a person, (2) intentionally flees, (3) from a peace officer, (4) with knowledge that he is a peace officer, (5) who is attempting to arrest or detain the defendant, and (6) the attempted arrest or detention is lawful. TEX. PENAL CODE ANN. § 38.04(a) (Vernon Supp. 2010); *see Rodriguez v. State*, 578 S.W.2d 419, 419 (Tex. Crim. App. 1979). Appellant challenges the sufficiency of the evidence to support the fifth and sixth elements.

### 1. Attempted Detention Element

There are three distinct types of interactions between a police officer and a citizen: (1) encounters, (2) investigative detentions, and (3) arrests. *State v. Perez*, 85 S.W.3d 817, 819 (Tex. Crim. App. 2002). In an encounter, an officer may ask the citizen if she is willing to answer questions or pose questions to her if she is willing to listen. *Id.* During an encounter, the citizen can terminate the interaction with the officer and walk away at any time. *Munera v. State*, 965 S.W.2d 523, 527 (Tex. App.—Houston [14th Dist.] 1997, pet. ref'd). Consensual encounters do not trigger Fourth Amendment protection if a reasonable person would feel free to disregard the officer and end the encounter at her own will and at any time. *Florida v. Bostick*, 501 U.S. 429, 434, 111 S. Ct. 2382, 2386, 115 L. Ed. 2d 389 (1991). Regardless of whether there has been any wrongdoing, in an encounter, officers may ask the individual general questions or ask to see and examine the individual's identification, so long as the officer does not indicate that compliance is required. *Id.* at 434-35, 111 S. Ct. at 2386.

By comparison, during an investigative detention, an officer is authorized to temporarily detain an individual for investigative purposes when the officer has reasonable suspicion that the individual could be involved in some type of criminal activity. *See Balentine v. State*, 71 S.W.3d 763, 768 (Tex. Crim. App. 2002). Investigative detentions are justified when, after considering

3

the totality of the circumstances, the detaining officer has specific articulable facts which, when taken together with rational inferences from those facts, lead to a reasonable suspicion that the person detained actually is, has been, or soon will be engaged in criminal activity. *Id.* The controlling question is whether the actions of the officer would have made a reasonable person feel that she was not free to decline the officer's request or otherwise terminate the encounter. *State v. Velasquez*, 994 S.W.2d 676, 679 (Tex. Crim. App. 1999). Consensual encounters can become investigative detentions if the officer conveys an indication that compliance is mandatory. *Id.* The existence of reasonable suspicion turns on an objective assessment of the detaining officer's actions in light of the facts and circumstances confronting him at the time, and not on the officer's state of mind. *See United States v. Knights*, 534 U.S. 112, 122, 122 S. Ct. 587, 593, 151 L. Ed. 2d 497 (2001); *Griffin v. State*, 215 S.W.3d 403, 409 (Tex. Crim. App. 2006). Absent reasonable suspicion, an investigative detention violates the Fourth Amendment. *See Francis v. State*, 922 S.W.2d 176, 178 (Tex. Crim. App. 1996).

The final level of interaction, an arrest, is also a seizure. *Id.* An arrest must be accompanied by probable cause to believe that a person has engaged in or is engaging in criminal activity. *Id.* This level of suspicion is meant to protect law abiding citizens from the high level of intrusion that accompanies an arrest. *Id.* Unlike an investigative detention, where the seizure may end within a brief period of time, the seizure involved in an arrest will not be brief. *Id.*

### 2. Lawfulness of Detention

Officer Waldon contended that the basis of the detention was to investigate a disturbance he observed in which Appellant participated, and particularly disorderly conduct, before the incident became a physically violent situation.

A person commits disorderly conduct if she intentionally or knowingly "uses abusive, indecent, profane, or vulgar language in a public place, and the language by its very utterance tends to incite an immediate breach of the peace." TEX. PENAL CODE ANN. § 42.01(a)(1) (Vernon Supp. 2010). Texas courts have defined and interpreted the term "breach of the peace" to mean an act that disturbs or threatens to disturb the tranquility enjoyed by the citizens. *See Ross v. State*, 802 S.W.2d 308, 314–15 (Tex. App.—Dallas 1990, no pet.). Texas courts have held that Section 42.01(a)(1) applies only to "fighting words." *See id.* (citing *Jimmerson v. State*, 561 S.W.2d 5, 7 (Tex. Crim. App. 1978)). Fighting words are those that inflict injury or tend to incite an immediate breach of the peace by their very utterance. *Id.* at 315. The test for fighting words is an objective one, i.e. whether an ordinary person, in the shoes of the addressee, would tend to have a violent reaction to the language used. *Duran v. Furr's Supermarkets, Inc.*, 921 S.W.2d 778, 785 (Tex. App.—El Paso 1996, writ denied); *Ross*, 802 S.W.2d at 315. Thus, it is possible to have a breach of the peace when the actual addressee is not tending towards violence, yet the average

addressee in the same shoes would be. *See **Ross***, 802 S.W.2d at 315. The term "mother f[\*\*\*]er" has been held to be a fighting word that tends to incite an immediate breach of the peace in some instances. *See **id.***

When an officer detains an individual to investigate disorderly conduct, and subsequently observes another offense during the investigation, "[t]he issue before [this court] is one of reasonable suspicion, not whether [the defendant] is guilty of disorderly conduct." *See **Ste-Marie v. State***, 32 S.W.3d 446, 449 (Tex. App.—Houston [14th Dist.] 2000, no pet.) (upholding marijuana conviction arising out of investigatory disorderly conduct detention because "utterance of the profanity provides sufficient articulable facts on which [officer] could reasonably believe [defendant] engaged in disorderly conduct").

## Application

Here, the first question is whether Appellant and Officer Waldon's interaction was merely an encounter. Appellant claims that Officer Waldon only asked her "what was going on." She testified that the officer never told her to stop, or if he did, she never heard him over the loud noise of the music and the crowd outside the club. Based on these assertions, she argues that there was only a citizen encounter, and that a reasonable person would believe she was free to leave.

Although Appellant claims that Officer Waldon did not command her to stop, or if he did, she did not hear him, the jury determined the credibility of the witnesses and resolved the evidentiary inconsistencies in the State's favor, which was its prerogative as fact finder. *Losada v. State*, 721 S.W.2d 305, 309 (Tex. Crim. App. 1986). Additionally, the jury rationally could have believed that Appellant knew or had reason to know that Officer Waldon was attempting to detain her, because when he initially approached her, she told him she did not have to talk to him, circled around the vehicle, and then attempted to retreat to the club. Likewise, given Appellant and Officer Waldon's close proximity before Appellant began to retreat to the club, rational jurors could have concluded that Appellant heard Officer Waldon's commands to stop, yet failed to do so. A rational jury also could have concluded that Appellant knew or should have known that Officer Waldon was attempting to question her and that a reasonable person would have believed she was not free to leave. In sum, a rational jury could have concluded that Officer Waldon made a show of authority and that Appellant refused to yield to it. *Griego v. State*, 331 S.W.3d 815, 828 (Tex. App.—Amarillo 2011) (op. on reh'g), *vacated on other grounds*, No. PD-1226-10, 2011 WL 1662378 (Tex. Crim. App. May 4, 2011) (per curiam).

The remaining question is whether Officer Waldon's attempted detention of Appellant was lawful. Viewing the evidence in the light most favorable to the verdict, the incident occurred at

3:00 a.m., outside a "b.y.o.b." nightclub known for a number of incidents of crime,[2] including three stabbings during the week prior to this incident, with approximately fifty to one hundred persons outside. Over the volume of the loud music and conversations of the crowd, Officer Waldon heard Appellant clearly yelling obscenities, including the term "mother f[***]er" several times, at an occupant of a vehicle while the officer stood fifty feet away from her. Based on these facts, Officer Waldon decided to approach Appellant and investigate. The officer testified that this type of situation often leads to an assault or domestic violence. Officer Waldon also testified that he was specifically investigating the offense of disorderly conduct. We conclude that Officer Waldon had reasonable suspicion to detain Appellant for that purpose. *See Ross*, 802 S.W.2d at 315.

Appellant cites two cases for the proposition that this was a simple argument, and she contends that these cases hold there is no reasonable basis to detain someone for a simple argument. *See Gurrola v. State*, 877 S.W.2d 300, 302-03 (Tex. Crim. App. 1994); *Hawkins v. State*, 758 S.W.2d 255, 256, 260 (Tex. Crim. App. 1988) (holding no basis to detain defendant standing outside nightclub where police did not suspect any criminal activity but knew his reputation as a drug user). Here, however, the officer reasonably believed that disorderly conduct occurred, which might lead to an assault, and possibly domestic violence. Therefore, Officer Waldon had reasonable suspicion to detain Appellant for a brief period of time to investigate and either confirm or dispel his suspicion. *See Ste-Marie*, 32 S.W.3d at 449 (stating that officer need not necessarily have probable cause to arrest for disorderly conduct; investigatory detention for that offense leading to discovery of other crimes is sufficient to justify detention because "utterance of the profanity provides sufficient articulable facts on which [officer] could reasonably believe [defendant] engaged in disorderly conduct"); *see also Hale v. State*, No. 03-10-00136-CR, 2010 WL 5129096, at *5-6 (Tex. App.—Austin Dec. 15, 2010, no pet.) (mem. op., not designated for publication) (holding officer had reasonable suspicion to detain for purpose of investigating possible domestic violence situation based on offense of disorderly conduct, and that such lawful detention provided probable cause to arrest for evading arrest or detention when defendant fled, although he was charged only with possession of marijuana after police caught, arrested, and searched him).

Immediately upon Officer Waldon's initiating contact, Appellant became belligerent and attempted to retreat to the club. First, she circled around the vehicle in an attempt to evade Officer

---

[2] Appellant also contends that the fact that the conversation occurred in a high crime area is not alone sufficient to justify her detention. *See Amorella v. State*, 554 S.W.2d 700, 702 (Tex. Crim. App. 1977). We agree with that general statement of law. But there are other facts present here that would have allowed Officer Waldon to detain Appellant and investigate the disturbance and possible offense of disorderly conduct.

Waldon. She then attempted to retreat to the nightclub at a "brisk pace," just "short of running," despite Officer Waldon's several commands to stop. Even a dispirited, brief attempt to walk away from an officer's command to stop has been held to be sufficient flight to constitute evading arrest or detention. *Griego*, 331 S.W.3d at 828 (citing *Sartain v. State*, No. 03–09–00066–CR, 2010 WL 2010838, at \*3 (Tex. App.—Austin May 19, 2010, no pet.) (mem. op., not designated for publication) (observing that conduct may still be evading "[h]owever ineffectual appellant's brief 'flight' may have been"); *Diaz v. State*, No. 08–09–00002–CR, 2010 WL 3259345, at \*2 (Tex. App.—El Paso Aug. 18, 2010, no pet.) (op., not designated for publication) (concluding that evidence was sufficient when "both officers testified that Appellant walked away after being questioned at the gate despite their commands to stop")).

Therefore, we conclude that the State presented sufficient evidence to show that Officer Waldon lawfully attempted to detain Appellant for the brief purpose of investigating the offense of disorderly conduct, and that Appellant immediately became combative and fled, albeit without maximum haste, despite Officer Waldon's commands to stop. Accordingly, there is sufficient evidence to support Appellant's conviction for evading arrest or detention.

Appellant's second issue is overruled.

## SUFFICIENCY OF THE EVIDENCE–RESISTING ARREST, SEARCH, OR TRANSPORTATION

In her first issue, Appellant argues that the evidence is insufficient to sustain her conviction for resisting arrest or detention. Specifically, Appellant contends that the evidence is insufficient to show that she used force "against the peace officer." As part of her argument, she contends that the arrestee must use force "toward an officer," and points out that the courts are split as to the requisite level of force required. She urges this court to adopt the line of authority requiring direct force toward an officer. Thus, her argument continues, when analyzed under those cases, her actions in merely ignoring the officer, jerking her arms away from him, and twisting her body away from him are not sufficient force to constitute resisting arrest or detention.

### Applicable Law

In order to convict an accused for resisting arrest, the state must prove beyond a reasonable doubt (1) that the accused intentionally (2) prevented or obstructed (3) a person she knows is a peace officer (4) from effecting an arrest (5) of herself or another (6) by using force against the peace officer or another. TEX. PENAL CODE ANN. § 38.03(a) (Vernon 2003); *Latham v. State*, 128 S.W.3d 325, 329 (Tex. App.—Tyler 2004, no pet.). It is no defense to prosecution that the arrest was unlawful. TEX. PENAL CODE ANN. § 38.03(b). The essential inquiry is whether the actor has forcibly interfered with the process of a peace officer's arrest to bring the actor under control. *Latham*, 128 S.W.3d at 329.

We have stated that "a person who uses force in order to shake off an officer's detaining grip, whether by pushing or pulling, may be guilty of resisting arrest." *Id.* at 330 (quoting *Torres v. State*, 103 S.W.3d 623, 627 (Tex. App.—San Antonio 2003, no pet.)); *see also Hopper v. State*, 86 S.W.3d 676, 679 (Tex. App.—El Paso 2002, no pet.). However, other courts have held that passive noncooperation, including merely pulling one's arms away from an officer's grip, is not sufficient force against the officer. *See Sheehan v. State*, 201 S.W.3d 820, 822 (Tex. App.—Waco 2006, no pet.) (holding passive noncooperation in pulling arms to chest and interlocking them posed no danger to arresting officers and did not constitute use of force as element of resisting arrest); *Leos v. State*, 880 S.W.2d 180, 184 (Tex. App.—Corpus Christi 1994, no pet.) (concluding that merely trying to flee, crawl away, or shake off a detaining grip is not sufficient force against a peace officer to sustain a conviction for resisting arrest); *Raymond v. State*, 640 S.W.2d 678, 679 (Tex. App.—El Paso 1982, pet. ref'd) (holding that merely pulling arm away from officer not sufficient force to sustain a conviction for resisting arrest).

In *Latham*, we held that the defendant's "actions in shoving [the officer] from the doorway of the bedroom with his forearm, shrugging and pulling away from attempts by [the officer] to grab him in the hallway, and pulling away from [the officer] while he was attempting to handcuff [the defendant] are sufficient force against [the officer] to sustain a conviction for resisting arrest." *Latham*, 128 S.W.3d at 331. In so holding, we followed the *Torres* and *Hopper* line of cases, and implicitly rejected the reasoning of *Leos* and *Raymond*. *See Latham*, 128 S.W.3d at 331 (citing *Torres*, 103 S.W.3d at 627; *Hopper*, 86 S.W.3d at 679).

More recently, the Texarkana court of appeals addressed this issue, and analyzed the relevant authorities and distinctions in the caselaw. That court held that "the statute authorizes a conviction for resisting arrest when the defendant actively pulls against an officer's established grasp of the defendant during an arrest attempt" and that "the statute is [also] satisfied by evidence of jerking against, turning in circles to resist, twisting and squirming to thwart, and struggling against, an officer's efforts to arrest an individual." *Pumphrey v. State*, 245 S.W.3d 85, 89 (Tex. App.—Texarkana 2008, pet. ref'd). The court concluded that the statute "does not require action directed *at or toward* an officer, just force exerted in opposition to his or her efforts at making an arrest." *Id.* at 91. We agree with the analysis and holding in *Pumphrey*.

**Application**

In the instant case, Officer Waldon testified that once he caught up with Appellant and grabbed her arm, she immediately turned, put her finger in his face, said that he did not have a right to touch her, and demanded that he release her. Appellant then jerked her arm out of Officer Waldon's grasp and continued to the nightclub entrance. Officer Waldon informed Appellant that she was under arrest and attempted to place her in handcuffs. Appellant again refused to

8

comply and was "jerking her arms away, arguing, twisting her body in such a way as to keep [Officer Waldon] from being able to handcuff her." Officer Waldon later testified Appellant was "twisting and turning her body, turning her arms." He testified that he "would try to grab her wrist, and she would jerk it away and, [he] believe[d], try[ ] to get away from [him]." Viewing the evidence in the light most favorable to the verdict, a rational jury could have concluded that when Appellant pulled and jerked her arm away, as well as twisted and turned her body away from Officer Waldon to prevent her arrest, she used force against Officer Waldon while he attempted to arrest her. *See Pumphrey*, 245 S.W.3d at 89, 91. Therefore, the evidence is sufficient to show that she resisted arrest. *See id.*

Appellant's first issue is overruled.

## DISPOSITION

Having overruled Appellant's first and second issues, we *affirm* the judgment of the trial court.

JAMES T. WORTHEN
Chief Justice

Opinion delivered May 31, 2011.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*

(DO NOT PUBLISH)