NOS.
12-09-00399-CR

     
12-09-00400-CR

            

IN THE COURT OF
APPEALS 

 

            TWELFTH
COURT OF APPEALS DISTRICT

 

                                      TYLER, TEXAS

TYNESHIA
ROECHELLE HENDERSON,    §                 APPEAL FROM THE

APPELLANT

 

V.                                                                         §                 COUNTY
COURT AT LAW

 

THE STATE OF TEXAS,

APPELLEE                                                        §                 ANDERSON
COUNTY, TEXAS

                                                        
                                           

MEMORANDUM OPINION

Tyneshia
Roechelle Henderson appeals her convictions for resisting arrest, search, or
transportation and evading arrest or detention.  She raises two issues on
appeal challenging the legal and factual sufficiency of the evidence to support
her convictions.  We affirm.

 

Background

            At
approximately 3:00 a.m. on January 22, 2006, Officer Jason Waldon of the
Palestine Police Department[1]
was on
patrol.  In full uniform, he was patrolling the area around the Touch of Class
Nightclub on foot.  He heard a woman later identified as Appellant yelling and
screaming obscenities at someone inside a vehicle.  Officer Waldon began to
investigate by approaching Appellant to interview her.  According to Officer
Waldon, Appellant “let loose with a tirade of expletives,” said she did not have
to speak with him, circled around the vehicle, and walked toward the entrance
of the club at a “brisk pace,” just “short of running.”  During this time,
Officer Waldon commanded Appellant to stop several times, but Appellant failed
to comply.  Officer Waldon caught up with Appellant and grabbed her arm.  She
immediately turned and put her finger in his face, told him that he did not
have a right to touch her, and demanded that he release her.  Appellant then
jerked her arm out of Officer Waldon’s grasp and continued to the nightclub
entrance.  Officer Waldon informed Appellant that she was under arrest and
attempted to place her in handcuffs.  Appellant again refused to comply and was
“jerking her arms away, arguing, twisting her body in such a way as to keep
[Officer Waldon] from being able to handcuff her.”  By this time, a crowd had
gathered, and another woman, later identified as Nikki Johnson, attempted to
intervene by pulling Appellant away from Officer Waldon.  The officer told
Johnson to release her grip, but she initially failed to heed Officer Waldon’s
command.  She chose to comply after being informed that she would receive a
dose of pepper spray if she did not release Appellant.  The entire episode
lasted approximately five minutes, with the struggle comprising “several
seconds” of the entire event.  Both Appellant and Nikki Johnson were eventually
detained and arrested.  While Officer Waldon attempted to escort Appellant to
his patrol unit, Appellant repeatedly tried to pull away from the officer and
also tried to walk away after he momentarily released her arm.

Appellant
was charged by information with the offenses of resisting arrest, search, or
transportation and evading arrest or detention.  Appellant pleaded not guilty
to both charges.  After a trial, the jury found Appellant guilty of both
charges.  The trial court assessed punishment at one year of confinement
suspended for two years on the resisting arrest conviction, and 180 days of
confinement suspended for one year, conditioned on serving ten days in the
county jail, for the evading detention conviction.  

 

Sufficiency
of the Evidence–Standard of Review

            In
her first and second issues, Appellant argues that the evidence is legally and
factually insufficient to support her convictions of resisting arrest, search,
or transportation and evading arrest or detention.

The
Texas Court of Criminal Appeals recently held that the Jackson v.
Virginia legal sufficiency standard is the only standard a reviewing
court should apply in determining whether the evidence is sufficient to support
each element of a criminal offense that the state is required to prove beyond a
reasonable doubt.  See Brooks v. State, 323 S.W.3d 893, 894 (Tex.
Crim. App. 2010) (plurality op.).  Accordingly, we will not independently
consider Appellant’s challenge to the factual sufficiency of the evidence. 

Under
the single sufficiency standard, we view the evidence in the light most
favorable to the verdict and determine whether any rational trier of fact could
have found the essential elements of the crime beyond a reasonable doubt.  Jackson
v. Virginia, 443 U.S. 307, 319, 99 S. Ct., 2781, 2789, 61 L. Ed. 2d 560
(1979); Hooper v. State, 214 S.W.3d 9, 13 (Tex. Crim. App.
2007).  Under this standard, a reviewing court does not sit as a thirteenth
juror and may not substitute its judgment for that of the fact finder by
reevaluating the weight and credibility of the evidence.  See Brooks,
323 S.W.3d at 899; Dewberry v. State, 4 S.W.3d 735, 740 (Tex.
Crim. App. 1999).  Rather, we defer to the trier of fact’s responsibility to
resolve conflicts in testimony, weigh evidence, and draw reasonable inferences
from basic facts to ultimate facts.  Jackson, 443 U.S. at 319, 99
S. Ct. at 2789; Hooper, 214 S.W.3d at 13.  Every fact does not
need to point directly and independently to the guilt of the appellant, as long
as the cumulative force of all the incriminating circumstances is sufficient to
support the conviction.  Hooper, 214 S.W.3d at 13. 

 

Sufficiency
of the Evidence–Evading Arrest or Detention

            In
her second issue, Appellant challenges the sufficiency of the evidence to
support her conviction for evading arrest or detention.  More particularly, she
contends that she was not detained and was thus free to disregard Officer Waldon’s
commands to stop.  Alternatively, she asserts that her detention was not
lawful.

Applicable
Law

The
essential elements of evading arrest or detention are (1) a person, (2)
intentionally flees, (3) from a peace officer, (4) with knowledge that he is a
peace officer, (5) who is attempting to arrest or detain the defendant, and (6)
the attempted arrest or detention is lawful.  Tex.
Penal Code Ann. § 38.04(a) (Vernon Supp. 2010); see Rodriguez
v. State, 578 S.W.2d 419, 419 (Tex. Crim. App. 1979).  Appellant
challenges the sufficiency of the evidence to support the fifth and sixth
elements.

1.     
Attempted Detention Element

There
are three distinct types of interactions between a police officer and a
citizen: (1) encounters, (2) investigative detentions, and (3) arrests.  State
v. Perez, 85 S.W.3d 817, 819 (Tex. Crim. App. 2002).  In an encounter,
an officer may ask the citizen if she is willing to answer questions or pose
questions to her if she is willing to listen.  Id.  During an
encounter, the citizen can terminate the interaction with the officer and walk
away at any time.  Munera v. State, 965 S.W.2d 523, 527 (Tex.
App.—Houston [14th Dist.] 1997, pet. ref’d).  Consensual encounters do not
trigger Fourth Amendment protection if a reasonable person would feel free to
disregard the officer and end the encounter at her own will and at any time.  Florida
v. Bostick, 501 U.S. 429, 434, 111 S. Ct. 2382, 2386, 115 L. Ed. 2d 389
(1991).  Regardless of whether there has been any wrongdoing, in an encounter,
officers may ask the individual general questions or ask to see and examine the
individual’s identification, so long as the officer does not indicate that
compliance is required.  Id. at 434-35, 111 S. Ct. at 2386.

By
comparison, during an investigative detention, an officer is authorized to
temporarily detain an individual for investigative purposes when the officer
has reasonable suspicion that the individual could be involved in some type of
criminal activity.  See Balentine v. State, 71 S.W.3d 763, 768
(Tex. Crim. App. 2002).  Investigative detentions are justified when, after
considering the totality of the circumstances, the detaining officer has
specific articulable facts which, when taken together with rational inferences
from those facts, lead to a reasonable suspicion that the person detained
actually is, has been, or soon will be engaged in criminal activity.  Id. 
The controlling question is whether the actions of the officer would have made
a reasonable person feel that she was not free to decline the officer’s request
or otherwise terminate the encounter.  State v. Velasquez, 994
S.W.2d 676, 679 (Tex. Crim. App. 1999).  Consensual encounters can become
investigative detentions if the officer conveys an indication that compliance
is mandatory.  Id.  The existence of reasonable suspicion turns
on an objective assessment of the detaining officer’s actions in light of the facts
and circumstances confronting him at the time, and not on the officer’s state
of mind.  See United States v. Knights, 534 U.S. 112, 122, 122 S.
Ct. 587, 593, 151 L. Ed. 2d 497 (2001); Griffin v. State, 215
S.W.3d 403, 409 (Tex. Crim. App. 2006).  Absent reasonable suspicion, an
investigative detention violates the Fourth Amendment.  See Francis v.
State, 922 S.W.2d 176, 178 (Tex. Crim. App. 1996).

The
final level of interaction, an arrest, is also a seizure.  Id.  An
arrest must be accompanied by probable cause to believe that a person has
engaged in or is engaging in criminal activity.  Id.  This level
of suspicion is meant to protect law abiding citizens from the high level of
intrusion that accompanies an arrest.  Id.  Unlike an
investigative detention, where the seizure may end within a brief period of
time, the seizure involved in an arrest will not be brief.  Id.

2.     
Lawfulness of Detention

Officer
Waldon contended that the basis of the detention was to investigate a
disturbance he observed in which Appellant participated, and particularly
disorderly conduct, before the incident became a physically violent situation. 

A
person commits disorderly conduct if she intentionally or knowingly “uses
abusive, indecent, profane, or vulgar language in a public place, and the
language by its very utterance tends to incite an immediate breach of the
peace.”  Tex. Penal Code Ann. §
42.01(a)(1) (Vernon Supp. 2010).  Texas courts have defined and interpreted the
term “breach of the peace” to mean an act that disturbs or threatens to disturb
the tranquility enjoyed by the citizens.  See Ross v. State, 802
S.W.2d 308, 314–15 (Tex. App.—Dallas 1990, no pet.).  Texas courts have held
that Section 42.01(a)(1) applies only to “fighting words.”   See id. (citing
Jimmerson v. State, 561 S.W.2d 5, 7 (Tex. Crim. App. 1978)).  
Fighting words are those that inflict injury or tend to incite an immediate
breach of the peace by their very utterance. Id. at 315.  The
test for fighting words is an objective one, i.e. whether an ordinary person,
in the shoes of the addressee, would tend to have a violent reaction to the
language used.  Duran v. Furr’s Supermarkets, Inc., 921 S.W.2d
778, 785 (Tex. App.—El Paso 1996, writ denied); Ross, 802 S.W.2d
at 315. Thus, it is possible to have a breach of the peace when the actual
addressee is not tending towards violence, yet the average addressee in the
same shoes would be.  See Ross, 802 S.W.2d at 315. The term
“mother f[***]er” has been held to be a fighting word that tends to incite an
immediate breach of the peace in some instances.  See id.

When
an officer detains an individual to investigate disorderly conduct, and
subsequently observes another offense during the investigation, “[t]he issue
before [this court] is one of reasonable suspicion, not whether [the defendant]
is guilty of disorderly conduct.”  See Ste-Marie v. State, 32
S.W.3d 446, 449 (Tex. App.—Houston [14th Dist.] 2000, no pet.) (upholding
marijuana conviction arising out of investigatory disorderly conduct detention
because “utterance of the profanity provides sufficient articulable facts on
which [officer] could reasonably believe [defendant] engaged in disorderly
conduct”). 

Application

Here,
the first question is whether Appellant and Officer Waldon’s interaction was
merely an encounter.  Appellant claims that Officer Waldon only asked her “what
was going on.”  She testified that the officer never told her to stop, or if he
did, she never heard him over the loud noise of the music and the crowd outside
the club.  Based on these assertions, she argues that there was only a citizen
encounter, and that a reasonable person would believe she was free to leave. 

Although
Appellant claims that Officer Waldon did not command her to stop, or if he did,
she did not hear him, the jury determined the credibility of the witnesses and
resolved the evidentiary inconsistencies in the State’s favor, which was its
prerogative as fact finder.  Losada v. State, 721 S.W.2d 305, 309
(Tex. Crim. App. 1986).  Additionally, the jury rationally could have believed
that Appellant knew or had reason to know that Officer Waldon was attempting to
detain her, because when he initially approached her, she told him she did not
have to talk to him, circled around the vehicle, and then attempted to retreat
to the club.  Likewise, given Appellant and Officer Waldon’s close proximity
before Appellant began to retreat to the club, rational jurors could have
concluded that Appellant heard Officer Waldon’s commands to stop, yet failed to
do so.  A rational jury also could have concluded that Appellant knew or should
have known that Officer Waldon was attempting to question her and that a
reasonable person would have believed she was not free to leave.  In sum, a
rational jury could have concluded that Officer Waldon made a show of authority
and that Appellant refused to yield to it.  Griego v. State, 331
S.W.3d 815, 828 (Tex. App.—Amarillo 2011) (op. on reh’g), vacated on other
grounds, No. PD-1226-10, 2011 WL 1662378 (Tex. Crim. App. May 4, 2011) (per
curiam).

The
remaining question is whether Officer Waldon’s attempted detention of Appellant
was lawful.  Viewing the evidence in the light most favorable to the verdict,
the incident occurred at 3:00 a.m., outside a “b.y.o.b.” nightclub known for a
number of incidents of crime,[2] including three stabbings during
the week prior to this incident, with approximately fifty to one hundred
persons outside.  Over the volume of the loud music and conversations of the
crowd, Officer Waldon heard Appellant clearly yelling obscenities, including
the term “mother f[***]er” several times, at an occupant of a vehicle while the
officer stood fifty feet away from her.  Based on these facts, Officer Waldon
decided to approach Appellant and investigate.  The officer testified that this
type of situation often leads to an assault or domestic violence.  Officer
Waldon also testified that he was specifically investigating the offense of
disorderly conduct.  We conclude that Officer Waldon had reasonable suspicion
to detain Appellant for that purpose.  See Ross, 802 S.W.2d at
315.

Appellant
cites two cases for the proposition that this was a simple
argument, and she contends that these cases hold there is no reasonable basis
to detain someone for a simple argument.  See Gurrola v. State,
877 S.W.2d 300, 302-03 (Tex. Crim. App. 1994); Hawkins v. State,
758 S.W.2d 255, 256, 260 (Tex. Crim. App. 1988) (holding no basis to detain
defendant standing outside nightclub where police did not suspect any criminal
activity but knew his reputation as a drug user).  Here, however, the officer
reasonably believed that disorderly conduct occurred, which might lead to an
assault, and possibly domestic violence.  Therefore, Officer Waldon had
reasonable suspicion to detain Appellant for a brief period of time to
investigate and either confirm or dispel his suspicion.  See Ste-Marie,
32 S.W.3d at 449 (stating that officer need not necessarily have probable cause
to arrest for disorderly conduct; investigatory detention for that offense
leading to discovery of other crimes is sufficient to justify detention because
“utterance of the profanity provides sufficient articulable facts on which
[officer] could reasonably believe [defendant] engaged in disorderly conduct”);
see also Hale v. State, No. 03-10-00136-CR, 2010 WL 5129096, at
*5-6 (Tex. App.—Austin Dec. 15, 2010, no pet.) (mem. op., not designated for
publication) (holding officer had reasonable suspicion to detain for purpose of
investigating possible domestic violence situation based on offense of
disorderly conduct, and that such lawful detention provided probable cause to
arrest for evading arrest or detention when defendant fled, although he was
charged only with possession of marijuana after police caught, arrested, and
searched him).

Immediately
upon Officer Waldon’s initiating contact, Appellant became belligerent and
attempted to retreat to the club.  First, she circled around the vehicle in an
attempt to evade Officer Waldon.  She then attempted to retreat to the
nightclub at a “brisk pace,” just “short of running,” despite Officer Waldon’s
several commands to stop.  Even a dispirited, brief attempt to walk away from
an officer’s command to stop has been held to be sufficient flight to
constitute evading arrest or detention.  Griego, 331 S.W.3d at
828 (citing Sartain v. State, No. 03–09–00066–CR, 2010 WL 2010838,
at *3 (Tex. App.—Austin May 19, 2010, no pet.) (mem. op., not designated for
publication) (observing that conduct may still be evading “[h]owever
ineffectual appellant's brief ‘flight’ may have been”); Diaz v. State,
No. 08–09–00002–CR, 2010 WL 3259345, at *2 (Tex. App.—El Paso Aug. 18, 2010, no
pet.) (op., not designated for publication) (concluding that evidence was
sufficient when “both officers testified that Appellant walked away after being
questioned at the gate despite their commands to stop”)). 

Therefore,
we conclude that the State presented sufficient evidence to show that Officer
Waldon lawfully attempted to detain Appellant for the brief purpose of
investigating the offense of disorderly conduct, and that Appellant immediately
became combative and fled, albeit without maximum haste, despite Officer
Waldon’s commands to stop.  Accordingly, there is sufficient evidence to
support Appellant’s conviction for evading arrest or detention.

Appellant’s
second issue is overruled.

 

Sufficiency
of the Evidence–Resisting Arrest, Search, or Transportation

In
her first issue, Appellant argues that the evidence is insufficient to sustain
her conviction for resisting arrest or detention.  Specifically, Appellant
contends that the evidence is insufficient to show that she used force “against
the peace officer.”  As part of her argument, she contends that the arrestee
must use force “toward an officer,” and points out that the courts are split as
to the requisite level of force required.  She urges this court to adopt the
line of authority requiring direct force toward an officer.  Thus, her argument
continues, when analyzed under those cases, her actions in merely ignoring the
officer, jerking her arms away from him, and twisting her body away from him
are not sufficient force to constitute resisting arrest or detention. 

Applicable
Law

In
order to convict an accused for resisting arrest, the state must prove beyond a
reasonable doubt (1) that the accused intentionally (2) prevented or obstructed
(3) a person she knows is a peace officer (4) from effecting an arrest (5) of
herself or another (6) by using force against the peace officer or another.  Tex. Penal Code Ann. § 38.03(a) (Vernon
2003); Latham v. State, 128 S.W.3d 325, 329 (Tex. App.—Tyler
2004, no pet.).  It is no defense to prosecution that the arrest was unlawful. Tex. Penal Code Ann. § 38.03(b).  The
essential inquiry is whether the actor has forcibly interfered with the process
of a peace officer’s arrest to bring the actor under control.  Latham,
128 S.W.3d at 329. 

We
have stated that “a person who uses force in order to shake off an officer’s
detaining grip, whether by pushing or pulling, may be guilty of resisting
arrest.”  Id. at 330 (quoting Torres v. State, 103
S.W.3d 623, 627 (Tex. App.—San Antonio 2003, no pet.)); see also Hopper
v. State, 86 S.W.3d 676, 679 (Tex. App.—El Paso 2002, no pet.). 
However, other courts have held that passive noncooperation, including merely
pulling one’s arms away from an officer’s grip, is not sufficient force against
the officer.  See Sheehan v. State, 201 S.W.3d 820, 822 (Tex.
App.—Waco 2006, no pet.) (holding passive noncooperation in pulling arms to
chest and interlocking them posed no danger to arresting officers and did not
constitute use of force as element of resisting arrest); Leos v. State,
880 S.W.2d 180, 184 (Tex. App.—Corpus Christi 1994, no pet.) (concluding that
merely trying to flee, crawl away, or shake off a detaining grip is not
sufficient force against a peace officer to sustain a conviction for resisting
arrest); Raymond v. State, 640 S.W.2d 678, 679 (Tex. App.—El Paso
1982, pet. ref’d) (holding that merely pulling arm away from officer not
sufficient force to sustain a conviction for resisting arrest).

In
Latham, we held that the defendant’s “actions in shoving [the
officer] from the doorway of the bedroom with his forearm, shrugging and
pulling away from attempts by [the officer] to grab him in the hallway, and
pulling away from [the officer] while he was attempting to handcuff [the
defendant] are sufficient force against [the officer] to sustain a conviction
for resisting arrest.”  Latham, 128 S.W.3d at 331.  In so
holding, we followed the Torres and Hopper line of
cases, and implicitly rejected the reasoning of Leos and Raymond. 
See Latham, 128 S.W.3d at 331 (citing Torres, 103
S.W.3d at 627; Hopper, 86 S.W.3d at 679). 

More
recently, the Texarkana court of appeals addressed this issue, and analyzed the
relevant authorities and distinctions in the caselaw.  That court held that
“the statute authorizes a conviction for resisting arrest when the defendant
actively pulls against an officer’s established grasp of the defendant during
an arrest attempt” and that “the statute is [also] satisfied by evidence of
jerking against, turning in circles to resist, twisting and squirming to
thwart, and struggling against, an officer’s efforts to arrest an individual.” 
Pumphrey v. State, 245 S.W.3d 85, 89 (Tex. App.—Texarkana 2008,
pet. ref’d).  The court concluded that the statute “does not require action
directed at or toward an officer, just force exerted in opposition to
his or her efforts at making an arrest.”  Id. at 91.  We agree
with the analysis and holding in Pumphrey.

Application

In
the instant case, Officer Waldon testified that once he caught up with
Appellant and grabbed her arm, she immediately turned, put her finger in his
face, said that he did not have a right to touch her, and demanded that he
release her.  Appellant then jerked her arm out of Officer Waldon’s grasp and
continued to the nightclub entrance.  Officer Waldon informed Appellant that she
was under arrest and attempted to place her in handcuffs.  Appellant again
refused to comply and was “jerking her arms away, arguing, twisting her body in
such a way as to keep [Officer Waldon] from being able to handcuff her.” 
Officer Waldon later testified Appellant was “twisting and turning her body,
turning her arms.”  He testified that he “would try to grab her wrist, and she
would jerk it away and, [he] believe[d], try[ ] to get away from [him].” 
Viewing the evidence in the light most favorable to the verdict, a rational
jury could have concluded that when Appellant pulled and jerked her arm away,
as well as twisted and turned her body away from Officer Waldon to prevent her
arrest, she used force against Officer Waldon while he attempted to arrest her. 
See Pumphrey, 245 S.W.3d at 89, 91.  Therefore, the evidence is
sufficient to show that she resisted arrest.  See id. 

Appellant’s
first issue is overruled.

 

Disposition

            Having
overruled Appellant’s first and second issues, we affirm the
judgment of the trial court.

 

                                  James T.
Worthen

                                                                                       
Chief Justice

 

 

 

Opinion
delivered May 31, 2011.

Panel
consisted of Worthen, C.J., Griffith, J., and Hoyle, J.

 

 

 

 

 

 

 

 

 

 

 

 

(DO NOT PUBLISH)


 
 
 
 
 
 
 
  
 
 
 
 
 
  
 












[1] Officer
Waldon is no longer employed by the Palestine Police Department.  He is
currently a detective at the Williamson County Sheriff’s Office.

 





[2] Appellant also
contends that the fact that the conversation occurred in a high crime area is
not alone sufficient to justify her detention.  See Amorella v.
State, 554 S.W.2d 700, 702 (Tex. Crim. App. 1977).  We agree with that
general statement of law.  But there are other facts present here that would
have allowed Officer Waldon
to detain Appellant and investigate the disturbance and possible offense of
disorderly conduct.