

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-14-00150-CR

TIMOTHY EARL PETTY, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 336th District Court
Fannin County, Texas
Trial Court No. CR-12-24244

Before Morriss, C.J., Moseley and Burgess, JJ.
Memorandum Opinion by Chief Justice Morriss

MEMORANDUM OPINION

Timothy Earl Petty has been adjudicated guilty of aggravated assault with a deadly weapon and sentenced to seven years' confinement. On appeal, Petty claims that the evidence was insufficient for the trial court to adjudicate his guilt. Because we find sufficient evidence to support the trial court's finding that Petty violated at least one of the terms of his community supervision,[1] we affirm the trial court's judgment and sentence.

We review a decision to adjudicate guilt in the same manner as we review a decision to revoke community supervision—for abuse of discretion. TEX. CODE CRIM. PROC. ANN. art. 42.12, § 5(b) (West Supp. 2014); *Little v. State*, 376 S.W.3d 217, 219 (Tex. App.—Fort Worth 2012, pet. ref'd) (citing *Rickels v. State*, 202 S.W.3d 759, 763 (Tex. Crim. App. 2006)); *see In re T.R.S.*, 115 S.W.3d 318, 320 (Tex. App.—Texarkana 2003, no pet.). A trial court's decision to revoke community supervision is examined in the light most favorable to the trial court's order. *T.R.S.*, 115 S.W.3d at 321. To authorize revocation of community supervision, the State must prove by a preponderance of the evidence every element of at least one ground for revocation. TEX. CODE CRIM. PROC. ANN. art. 42.12, § 11 (West Supp. 2014); *T.R.S.*, 115 S.W.3d at 320. The trial court did not abuse its discretion if the greater weight of credible evidence created a reasonable belief that Petty violated at least one condition of his community supervision. *See Sanchez v. State*, 603 S.W.2d 869, 870–71 (Tex. Crim. App. [Panel Op.] 1980); *T.R.S.*, 115 S.W.3d at 321.

---

[1]In 1993, during the 73rd legislative session, the statutory term for probation was changed to "community supervision." Both terms refer to the same process and will be used interchangeably in this opinion. *See Ivey v. State*, 277 S.W.3d 43, 51 n.48 (Tex. Crim. App. 2009).

"In a probation revocation proceeding[,] the trial court is the sole trier of facts, credibility of witnesses[,] and weight to be given to testimony." *Taylor v. State*, 604 S.W.2d 175, 179 (Tex. Crim. App. 1980); *T.R.S.*, 115 S.W.3d at 321. As the fact-finder, the trial court is free to accept or reject any or all of a witness' testimony. *Mattias v. State*, 731 S.W.2d 936, 940 (Tex. Crim. App. 1987).

The trial court found Petty violated one term of his community supervision, specifically, that he not commit any new offense. Here, the State presented evidence that Petty committed the offense of resisting arrest.[2] Thus, the issue for us to determine is whether the State proved, by a preponderance of the evidence, that Petty committed the offense of resisting arrest.

One commits the offense of resisting arrest if he or she "intentionally prevents or obstructs . . . a peace officer . . . from effecting an arrest . . . of the actor . . . by using force against the peace officer or another." TEX. PENAL CODE ANN. § 38.03 (West 2011). The words "force" and "against" are not defined in the Texas Penal Code, so we should apply ordinary dictionary meanings to the terms. *Dobbs v. State*, 434 S.W.3d 166, 171 (Tex. Crim. App. 2014). The "Legislature would have understood the phrase 'using force against the peace officer or another' as meaning violence or physical aggression, or an immediate threat thereof, in the direction of and/or into contact with, or in opposition or hostility to, a peace officer or another." *Id.*

The State presented testimony from two Bonham police officers who described serving an arrest warrant on Petty. The first officer, Josh Cunningham, testified that Petty backed away

---

[2]The State's motion alleged four grounds of violation; the trial court found three allegations not true.

as Cunningham tried to place a hand on Petty's wrist. At one time, Petty "was able to get free from [Cunningham's] hand and then continued to walk towards the street." Cunningham answered in the negative when asked if Petty "use[d] or attempt[ed] to use any force against" Cunningham or his partner, Cory Brookshire.[3]

Much of the testimony suggests Petty's movements were directed away from the officers, not toward them. Brookshire said Petty pulled his wrist away from Cunningham when that officer tried to put handcuffs on Petty, and Petty "was able to break his left wrist free from [Brookshire's] hand." Brookshire said Petty "balled [his hand] . . . up into a fist like he was about to strike Patrolman Cunningham." However, Cunningham had said, "At one time when I was placing the -- attempting to place the handcuff, he kind of reared his arm back like that, but not like he was going to, I guess, strike me." Brookshire described Petty as strong, citing Petty's employment doing "physical labor, roofing." He characterized Petty's response to the officers' attempted arrests as "Resisting . . . and pulling away. Being forceful." Petty "looked very angry, gritting his teeth, and then he balled up his hand like he was getting ready to punch Patrolman Cunningham but he did not." Brookshire ultimately used pepper spray to subdue Petty.

There is also evidence, however, of force directed toward an officer. Brookshire said Petty hit him in the back, although Brookshire acknowledged he did not feel this blow[4] and did not know about it until informed by a witness. Presumably, Brookshire referred to witness Daniel Pinion, a neighbor of Petty's who observed the confrontation and arrest. Pinion testified

---

[3]      [Prosecutor]  Now, did he use or attempt to use any force against you or Corporal Brookshire?

[Cunningham] No.

[4]Brookshire indicated he was wearing a protective vest, and so did not feel any blow against his back.

4

that he saw the officers escorting Petty to the police car when "Mr. Petty shifted his weight into the officer and used his shoulder to break the grip" of one of the police officers. Petty then "threw an elbow into the midsection/chest area" of one of the officers.[5]

Despite the inconsistencies and contradictions, there was evidence that could have been believed by the trial court that Petty used "violence or physical aggression, or an immediate threat thereof, in the direction of and/or into contact with, or in opposition or hostility to, a peace officer . . . ." *See Dobbs*, 434 S.W.3d at 171. Even without allowing for resistance against an officer's efforts to restrain Petty, Pinion's description, alone, of an elbow thrown against one of the officers meets that definition. In addition, we have previously held that a defendant's twisting, squirming, and pulling away from an officer or "forcefully pull[ing] away from the officer's restraining grasp" is sufficient to establish the offense of resisting arrest. *Pumphrey v. State*, 245 S.W.3d 85, 91–92 (Tex. App.—Texarkana 2008, pet. ref'd).[6] Post *Dobbs*, the Austin Court of Appeals reached similar results. Where a defendant was described in various ways as "forcefully pulling away" from officers, that court held that such evidence allowed the trial court to have found that the defendant resisted arrest. *Finley v. State*, No. 03-13-00015-CR, 2014 Tex. App. LEXIS 9621, at *13–14 (Tex. App.—Austin Aug. 28, 2014, pet. filed).

---

[5]In fairness, we observe that Pinion's testimony did not include any statement that he saw Brookshire struck in the back by Petty.

[6]The Texas Court of Criminal Appeals discussed *Pumphrey* and seemed to approve of our analysis there:

> [*Pumphrey* and *Hopper v. State*, 86 S.W.3d 676 (Tex. App.— El Paso 2002, no pet.)] are consistent with requiring some showing of force that is actually directed against the officer in the sense that it is either in opposition to the officer's physical efforts at making an arrest, such as forceful pulling away from the officer, or is physically directed at or toward the officer, such as hitting or punching the officer.

*Dobbs*, 434 S.W.3d at 172.

5

Petty relies on the inconsistent descriptions of the events from Cunningham and Brookshire and potential credibility problems on the part of Pinion. Pinion testified he suffered from degenerative disk disease, for which he daily took medications for pain relief and muscle relaxation.[7] Pinion, though, testified that none of these drugs affected his ability to observe the events to which he testified or his ability to relate those events. Pinion also testified that he considered Petty a "neighborhood nuisance" and had called the police about seven times to report disturbances or possible drug dealing at Petty's house. The trial court observed Pinion's demeanor and had the sole authority to determine the weight to be given the testimony. *See Dansby v. State*, 398 S.W.3d 233, 244 (Tex. Crim. App. 2013).

The record is sufficient to establish that the "greater weight of the credible evidence [] would create a reasonable belief that the defendant has violated a term of his probation." *Rickels v. State*, 202 S.W.3d 759, 763–64 (Tex. Crim. App. 2006) (quoting *Scamardo v. State*, 517 S.W.2d 293, 298 (Tex. Crim. App. 1974).

---

[7]Pinion took hydrocodone and gabapentin three times a day, took cyclobenzaprine as a muscle relaxant before bed, used a TENS electrical stimulation unit; and applied the topical ointment lidocaine periodically. Pinion said he was "always in severe pain."

We affirm the trial court's judgment and sentence.


Josh R. Morriss, III
Chief Justice

Date Submitted: January 29, 2015
Date Decided: February 4, 2015

Do Not Publish