PD-0256-15

PD-0256-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 3/10/2015 10:52:44 AM
Accepted 3/10/2015 11:11:42 AM
ABEL ACOSTA
CLERK

No. _____

In the
Texas Court of Criminal Appeals
At Austin

_____

**No.** 06-14-00150-CR

In the Court of Appeals for the
Sixth District of Texas
At Texarkana

_____

**TIM PETTY,**
**Appellant**

*v.*

**STATE OF TEXAS,**
**Appellee**

_____

**PETITION FOR DISCRETIONARY REVIEW**
**OF APPELLANT TIM PETTY**

_____

Micah Belden
711 N. Travis
Sherman, TX 75090
Telephone: (903) 744-4252
Fax: (903) 893-1734
State Bar No. 24044294
Board Certified in Criminal Law
Texas Board of Legal Specialization
*Counsel for Appellant Tim Petty*

FILED IN
COURT OF CRIMINAL APPEALS

March 10, 2015

ABEL ACOSTA, CLERK

**TABLE OF CONTENTS**

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .…..… . . . . . . . 2

INDEX OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .…..…. . . . . . . . 3

IDENTITY OF COURT, PARTIES AND COUNSEL.….. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .…..3

STATEMENT REGARDING ORAL ARGUMENT . . . . . . . . . . . . . . . . . . . .…..… . . . . . . . 4

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .…..… . . . . . . . 4

STATEMENT OF PROCEDURAL HISTORY . . . . . . . . . . . . . . . . . . . . . . . . .…..… . . . . . . . 4

QUESTIONS PRESENTED FOR REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . .…..… . . . . 4

ARGUMENT IN SUPPORT OF REVIEW.........................…. . . . . . . . . . . . . . . . . . . . . .…..… . 4

PRAYER FOR RELIEF . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .…..… . . . . …. . . . 8

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .…..… . … . . . . 8

CERTIFICATE OF COMPLIANCE.…………………………………………..…….9

APPENDIX . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .…..… . . . . . . . . .…END

## INDEX OF AUTHORITIES

**CASES**

*Dansby v. State*, 398 S.W.3d 233 (Tex. Crim. App. 2013)       5

*Dobbs v. State*, citing 434 S.W.3d 166 (Tex. Crim. App. 2014)    5

*Rickels v. State*, 202 S.W.3d 759 (Tex. Crim. App. 2006)    5

## <u>IDENTITY OF COURT, PARTIES AND COUNSEL</u>

The following is a complete list of all parties to the Trial Court's Judgment and their counsel in the Trial Court:

**TRIAL COURT:**
336th District Court
Hon. Laurine Blake
101 E. Sam Rayburn, Suite 200
Bonham TX 75418
P.: (903) 583-2863
F.: (903) 640-1826

**THE STATE OF TEXAS** / Appellee:
Mr. Richard Glaser
Brad Setterberg, ADA
101 E. Sam Rayburn, Suite 301
P.: (903) 583-7448
F.: (903) 583-7682

**TIM PETTY** /Appellant:
Mr. Micah Belden
Attorney at Law
711 N. Travis
Sherman, TX 75090
P.: (903) 744-4252
F.: (903) 893-1734

**To The Honorable Court of Criminal Appeals of Texas:**

## STATEMENT REGARDING ORAL ARGUMENT

Appellant waives oral argument.

## STATEMENT OF THE CASE

Tim Petty pled guilty in the 336th Judicial District Court of Fannin County, Texas on June 5, 2013 to aggravated assault with a deadly weapon. He was placed on five years deferred adjudication probation. The state filed a motion to adjudicate Mr. Petty's probation alleging that he committed the new offenses of criminal trespass, theft, simple assault and resisting arrest. Mr. Petty pled not true to each count of the motion, and the Court overruled each allegation except for resisting arrest. The judge revoked Mr. Petty's probation and assessed his punishment at seven years confinement.

## STATEMENT OF PROCEDURAL HISTORY

A panel of the Sixth Court of Appeals affirmed the court's trial court's judgment adjudicating Mr. Petty's guilt on February 4, 2015 in an unpublished opinion. No motion for rehearing was filed. No mandate has issued. Appellant now files his petition for discretionary review.

## QUESTION PRESENTED FOR REVIEW

**THE COURT OF APPEALS ERRED IN NOT REVERSING THE CASE FOR LACK OF LEGALLY SUFFICIENT EVIDENCE THAT TIM PETTY COMMITTED THE OFFENSE OF RESISTING ARREST UNDER THIS COURT'S *DOBBS* DECISION.**

## ARGUMENT IN SUPPORT OF REVIEW

This case presents the question whether one witness whose credibility is very much in doubt by common sense, whose testimony is unsupported and in ways contradicted by the two officers at the scene making the arrest, can itself be "the greater weight of the credible evidence

4

[which] would create a reasonable belief that the defendant has violated a term of his probation," and prove by a preponderance of the evidence that a Defendant violated his probation by resisting arrest. *See Opinion below, at* 6 (citing *Rickels v. State*, 202 S.W.3d 759, 763-64 (Tex. Crim. App. 2006). The Sixth Court of Appeals also cited this Court's dissent in *Dansby v. State*, 398 S.W.3d 233, 244 (Tex. Crim. App. 2013), which cited the line of cases that the trial court had the sole authority to determine the weight given the testimony.

But, an "abuse of discretion" review must determine if a trial court's finding that a Defendant violated his probation was based on "the greater weight of the credible evidence." Here, an unsupported witness who thought Mr. Petty was a "neighborhood nuisance," who took three intoxicating drugs daily, was "always in severe pain," and testified contrary to the arresting officers, is virtually the sole basis for revocation. Mr. Petty asks that this petition be granted and this Court give a review to whether such evidence is sufficient to revoke his probation.

The Court of Appeals correctly cited this Court's decision in *Dobbs v. State*, where this Court defined resisting arrest's "using force against the peace officer or another" as meaning violence or physical aggression, or an immediate threat therefore, in the direction of and/or contact with, or in opposition or hostility to, a peace officer or another." *Opinion below at* 3 (citing 434 S.W.3d 166, 171 (Tex. Crim. App. 2014.) However, no such evidence was presented except through Mr. Pinion.

At the motion to revoke hearing in the trial court, Officer Josh Cunningham first testified about the "resisting arrest" accusation:

> I told Mr. Petty that he was under arrest at that time for those [probation] warrants. As I attempted to place my handcuff on his right wrist, he kind of backed up and said, basically, he wanted to know more about the warrants and I told him I didn't know about the warrant…I could explain all that when we got to the police department and read over it. And he continued to back up…while he continued to back up, Corporal Brookshire was standing behind him, and Corporal Brookshire grabbed his left wrist and I continued

5

to grab his right wrist and tried to place his hands behind his back. Corporal Brookshire told him, Sir, stop resisting. During the struggle there, I was able to place a handcuff on his right wrist. We still continued to try to get both arms behind his back. At that time, he was able to get free from my hand and then continued to walk towards the street, and that's when Corporal Brookshire told him, stop resisting, took his OC spray…and gave him a short burst in the face, and then Mr. Petty fell to his knees and then to his stomach, and then we were able to put the handcuffs on.

On cross examination, Cunningham responded affirmatively to the question whether Petty "didn't use any physical force such as assaultive force against [Cunningham] or Officer Brookshire. He was just not complying with the act of being arrested."

Officer Brookshire described the incident slightly differently:

[Petty] was informed the reason for the arrest, the outstanding warrants. Patrolman Cunningham was able to get handcuffs on Mr. Petty's right wrist. I grabbed his left wrist. We tried to bring it behind his body. Mr. Petty was able to break his left wrist free from my hand. He balled it up into a fist like he was about to strike Patrolman Cunningham. I put my left arm around his neck in like a chokehold, removed my OC canister from my belt, administered a burst of OC spray to his face, and was able to bring him down to his knees so we could [a]ffect the arrest.

On questioning from the District Attorney, Brookshire said Petty was "resisting…and pulling away." Brookshire stated that Mr. Petty struck him in the back at some point, but his knowledge was only that a witness that told him that and he did not feel it, nor could he explain how that could have actually happened in specific terms.

The neighbor, Daniel Pinion, testified that he himself "stepped out of [his] house as the officers were escorting [Petty] to the patrol car." He testified:

But what I saw was, there was one officer on each elbow of Mr. Petty escorting him to the vehicle, and about the time they got to the curb, Mr. Petty shifted his weight into the officer and used his shoulder to break the grip of – I believe it's Officer Scottsdale – the slick-headed fellow…But after he used his shoulder to break the grip of the officer, he then threw an elbow into the midsection/chest area of Officer Scottsdale.

6

No officer Scottsdale ever testified, and neither of the officers testified to this event happening. This "thrown elbow" would have been a new felony assault on a public servant charge had the officer perceived it or believed he had probable cause for the arrest.

Pinion then stated that it was after the "thrown elbow" when Officer Brookshire "maced" Petty. Pinion also stated he thought Mr. Petty was a "neighborhood nuisance." Pinion testified further that he, Pinion, is in severe pain daily, takes hydrocodone and Gabapentin three times a day, uses a lidocaine cream, and uses a TENS unit for electrical shock therapy as needed, which included the day before this incident. Pinion also has astigmatism and did not wear glasses to court, although he claimed he was wearing them at the time of the incident. Pinion admitted that when he came outside, Mr. Petty was already in handcuffs. He had also called the police seven times on Mr. Petty prior to this incident.

Mr. Petty recalled the event in his own testimony:

> …And I said, Well how can you come arrest me if you ain't got nothing or can't tell me what you're arresting me for? You just tell me I've got a warrant? What do I have a warrant for? And then all of a sudden, Brookshire's starting yanking me around, come up behind me, and all that. Josh - not Brookshire, the other one….Cunningham had me. He put this arm behind me. I was like, Hold on, wait a minute. What am I being arrested – you know, find out. And that's when – Brookshire was behind me, twisted my arm all up, wrapped his leg around me, swung me around with his arm, come up underneath me like that. And I was trying to stand up, because he about knocked me down, and we stumbled through there. He said, you're under arrest. I said, Fine, you know. You're resisting. I said I'm not resisting. What am I under arrest for? Tell me something. I don't give them no problems. He slams me to the ground, and as I am on the ground, he maces me about this far away.
> Q. Okay. Did you ever pull your fist back –
> A. No, sir.
> Q. – either to pull away from the arrest or to act like you were going to punch Officer Cunningham?
> A. No. I wouldn't punch a police officer.
> Q. Did you hit either officer?
> A. No.

7

Q. Okay. Did you use force against the officer in any way?
A. No, sir, not whatsoever…

The only *Dobbs* evidence that Mr. Petty used violence or physical aggregation in opposition or hostility to a peace officer was the unsupported testimony of Mr. Pinion, which was contradicted in several ways by the arresting officers. Mr. Pinion's testimony did not match their timeline, and it was not reasonable that he either saw the event happen or could actually remember what happened from his testimony. The arresting officer stated he only heard about being hit from Mr. Pinion, and could not explain how it could have happened. Accordingly, this Court should grant review of whether Mr. Petty's probation was revoked on insufficient evidence of resisting arrest, and whether the "greater weight of the credible evidence" supported Mr. Petty's revocation.

**PRAYER FOR RELIEF**

Mr. Petty respectfully prays that this Honorable Court of Criminal Appeals review the entire record from all the proceedings below and grant this Petition for Discretionary Review.

Respectfully submitted,

__/s/_____
Micah Belden
711 N. Travis
Sherman, TX 75090
Telephone: (903) 744-4252
Fax: (903) 476-5555
State Bar No. 24044294
Board Certified in Criminal Law
Texas Board of Legal Specialization
*Counsel for Appellant Tim Petty*

**CERTIFICATE OF SERVICE**

I do hereby certify that on this March 10, 2015, a true and correct copy of this Petition for Discretionary Review of Appellant Tim Petty, was forwarded by first class mail to:

Brad Setterberg

Assistant Fannin County District Attorney
101 E. Sam Rayburn, Third Floor
Bonham, TX 75418

Counsel for Appellee State of Texas
State Prosecuting Attorney
P.O. Box 12405
Austin, TX 78711

_____/s/_____
Micah Belden

## CERTIFICATE OF COMPLIANCE

I certify that this document conforms with the word count requirements of the Texas Rules of Appellate Procedure, containing 1,420 words which are not exempted under the rules.

_____/s/_____
Micah Belden



# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-14-00150-CR

_____

TIMOTHY EARL PETTY, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 336th District Court
Fannin County, Texas
Trial Court No. CR-12-24244

Before Morriss, C.J., Moseley and Burgess, JJ.
Memorandum Opinion by Chief Justice Morriss

## MEMORANDUM OPINION

Timothy Earl Petty has been adjudicated guilty of aggravated assault with a deadly weapon and sentenced to seven years' confinement. On appeal, Petty claims that the evidence was insufficient for the trial court to adjudicate his guilt. Because we find sufficient evidence to support the trial court's finding that Petty violated at least one of the terms of his community supervision,[1] we affirm the trial court's judgment and sentence.

We review a decision to adjudicate guilt in the same manner as we review a decision to revoke community supervision—for abuse of discretion. TEX. CODE CRIM. PROC. ANN. art. 42.12, § 5(b) (West Supp. 2014); *Little v. State*, 376 S.W.3d 217, 219 (Tex. App.—Fort Worth 2012, pet. ref'd) (citing *Rickels v. State*, 202 S.W.3d 759, 763 (Tex. Crim. App. 2006)); *see In re T.R.S.*, 115 S.W.3d 318, 320 (Tex. App.—Texarkana 2003, no pet.). A trial court's decision to revoke community supervision is examined in the light most favorable to the trial court's order. *T.R.S.*, 115 S.W.3d at 321. To authorize revocation of community supervision, the State must prove by a preponderance of the evidence every element of at least one ground for revocation. TEX. CODE CRIM. PROC. ANN. art. 42.12, § 11 (West Supp. 2014); *T.R.S.*, 115 S.W.3d at 320. The trial court did not abuse its discretion if the greater weight of credible evidence created a reasonable belief that Petty violated at least one condition of his community supervision. *See Sanchez v. State*, 603 S.W.2d 869, 870–71 (Tex. Crim. App. [Panel Op.] 1980); *T.R.S.*, 115 S.W.3d at 321.

---

[1]In 1993, during the 73rd legislative session, the statutory term for probation was changed to "community supervision." Both terms refer to the same process and will be used interchangeably in this opinion. *See Ivey v. State*, 277 S.W.3d 43, 51 n.48 (Tex. Crim. App. 2009).

"In a probation revocation proceeding[,] the trial court is the sole trier of facts, credibility of witnesses[,] and weight to be given to testimony." *Taylor v. State*, 604 S.W.2d 175, 179 (Tex. Crim. App. 1980); *T.R.S.*, 115 S.W.3d at 321. As the fact-finder, the trial court is free to accept or reject any or all of a witness' testimony. *Mattias v. State*, 731 S.W.2d 936, 940 (Tex. Crim. App. 1987).

The trial court found Petty violated one term of his community supervision, specifically, that he not commit any new offense. Here, the State presented evidence that Petty committed the offense of resisting arrest.[2] Thus, the issue for us to determine is whether the State proved, by a preponderance of the evidence, that Petty committed the offense of resisting arrest.

One commits the offense of resisting arrest if he or she "intentionally prevents or obstructs . . . a peace officer . . . from effecting an arrest . . . of the actor . . . by using force against the peace officer or another." TEX. PENAL CODE ANN. § 38.03 (West 2011). The words "force" and "against" are not defined in the Texas Penal Code, so we should apply ordinary dictionary meanings to the terms. *Dobbs v. State*, 434 S.W.3d 166, 171 (Tex. Crim. App. 2014). The "Legislature would have understood the phrase 'using force against the peace officer or another' as meaning violence or physical aggression, or an immediate threat thereof, in the direction of and/or into contact with, or in opposition or hostility to, a peace officer or another." *Id.*

The State presented testimony from two Bonham police officers who described serving an arrest warrant on Petty. The first officer, Josh Cunningham, testified that Petty backed away

---

[2]The State's motion alleged four grounds of violation; the trial court found three allegations not true.

as Cunningham tried to place a hand on Petty's wrist. At one time, Petty "was able to get free from [Cunningham's] hand and then continued to walk towards the street." Cunningham answered in the negative when asked if Petty "use[d] or attempt[ed] to use any force against" Cunningham or his partner, Cory Brookshire.[3]

Much of the testimony suggests Petty's movements were directed away from the officers, not toward them. Brookshire said Petty pulled his wrist away from Cunningham when that officer tried to put handcuffs on Petty, and Petty "was able to break his left wrist free from [Brookshire's] hand." Brookshire said Petty "balled [his hand] . . . up into a fist like he was about to strike Patrolman Cunningham." However, Cunningham had said, "At one time when I was placing the -- attempting to place the handcuff, he kind of reared his arm back like that, but not like he was going to, I guess, strike me." Brookshire described Petty as strong, citing Petty's employment doing "physical labor, roofing." He characterized Petty's response to the officers' attempted arrests as "Resisting . . . and pulling away. Being forceful." Petty "looked very angry, gritting his teeth, and then he balled up his hand like he was getting ready to punch Patrolman Cunningham but he did not." Brookshire ultimately used pepper spray to subdue Petty.

There is also evidence, however, of force directed toward an officer. Brookshire said Petty hit him in the back, although Brookshire acknowledged he did not feel this blow[4] and did not know about it until informed by a witness. Presumably, Brookshire referred to witness Daniel Pinion, a neighbor of Petty's who observed the confrontation and arrest. Pinion testified

---

[3] [Prosecutor] Now, did he use or attempt to use any force against you or Corporal Brookshire?

[Cunningham] No.

[4]Brookshire indicated he was wearing a protective vest, and so did not feel any blow against his back.

4

that he saw the officers escorting Petty to the police car when "Mr. Petty shifted his weight into the officer and used his shoulder to break the grip" of one of the police officers. Petty then "threw an elbow into the midsection/chest area" of one of the officers.[5]

Despite the inconsistencies and contradictions, there was evidence that could have been believed by the trial court that Petty used "violence or physical aggression, or an immediate threat thereof, in the direction of and/or into contact with, or in opposition or hostility to, a peace officer . . . ." *See Dobbs*, 434 S.W.3d at 171. Even without allowing for resistance against an officer's efforts to restrain Petty, Pinion's description, alone, of an elbow thrown against one of the officers meets that definition. In addition, we have previously held that a defendant's twisting, squirming, and pulling away from an officer or "forcefully pull[ing] away from the officer's restraining grasp" is sufficient to establish the offense of resisting arrest. *Pumphrey v. State*, 245 S.W.3d 85, 91–92 (Tex. App.—Texarkana 2008, pet. ref'd).[6] Post *Dobbs*, the Austin Court of Appeals reached similar results. Where a defendant was described in various ways as "forcefully pulling away" from officers, that court held that such evidence allowed the trial court to have found that the defendant resisted arrest. *Finley v. State*, No. 03-13-00015-CR, 2014 Tex. App. LEXIS 9621, at *13–14 (Tex. App.—Austin Aug. 28, 2014, pet. filed).

---

[5]In fairness, we observe that Pinion's testimony did not include any statement that he saw Brookshire struck in the back by Petty.

[6]The Texas Court of Criminal Appeals discussed *Pumphrey* and seemed to approve of our analysis there:

> [*Pumphrey* and *Hopper v. State*, 86 S.W.3d 676 (Tex. App.— El Paso 2002, no pet.)] are consistent with requiring some showing of force that is actually directed against the officer in the sense that it is either in opposition to the officer's physical efforts at making an arrest, such as forceful pulling away from the officer, or is physically directed at or toward the officer, such as hitting or punching the officer.

*Dobbs*, 434 S.W.3d at 172.

5

Petty relies on the inconsistent descriptions of the events from Cunningham and Brookshire and potential credibility problems on the part of Pinion. Pinion testified he suffered from degenerative disk disease, for which he daily took medications for pain relief and muscle relaxation.[7] Pinion, though, testified that none of these drugs affected his ability to observe the events to which he testified or his ability to relate those events. Pinion also testified that he considered Petty a "neighborhood nuisance" and had called the police about seven times to report disturbances or possible drug dealing at Petty's house. The trial court observed Pinion's demeanor and had the sole authority to determine the weight to be given the testimony. *See Dansby v. State*, 398 S.W.3d 233, 244 (Tex. Crim. App. 2013).

The record is sufficient to establish that the "greater weight of the credible evidence [] would create a reasonable belief that the defendant has violated a term of his probation." *Rickels v. State*, 202 S.W.3d 759, 763–64 (Tex. Crim. App. 2006) (quoting *Scamardo v. State*, 517 S.W.2d 293, 298 (Tex. Crim. App. 1974).

---

[7]Pinion took hydrocodone and gabapentin three times a day, took cyclobenzaprine as a muscle relaxant before bed, used a TENS electrical stimulation unit; and applied the topical ointment lidocaine periodically. Pinion said he was "always in severe pain."

We affirm the trial court's judgment and sentence.


Josh R. Morriss, III
Chief Justice

Date Submitted:     January 29, 2015
Date Decided:       February 4, 2015

Do Not Publish